Good morning, Your Honors. Marie Johnson on behalf of Petitioner. The questions we are considering today are first, whether or not Mr. Villegas, Petitioner, will be subjected to torture if he were to return to Mexico and be confined to an institution. Would you speak? Sorry. I apologize, Your Honors. You might have to talk right into the mic just like I am so that Judge Nelson, we can hear. The first question that we must address today is whether Mr. Villegas, Petitioner, will be subjected to torture upon return to Mexico by confinement in a mental institution. This must be reviewed and examined in light of the fact that Mr. Villegas will have no choice other than to be confined to a mental institution. Why is that? I don't understand that. He's employed as a handyman here, isn't he? Your Honor, here he has had several odd jobs. However, were he to return to Mexico, he would be unable to find employment sufficient to afford his mental health care. Where was that proven? I believe in the certified administrative record, Your Honor. We submitted evidence. Can you be specific? Why can't he work as a handyman in Mexico? He could, Your Honor, get occasional odd jobs. However, these jobs are not sufficient in order to support an income that could afford medication.  The medication, Your Honor, is not, I don't believe we included specific prices in the record. However, it is a fairly expensive commodity. In addition to the fact that In my experience, a lot of people go to Mexico because the drugs are cheaper in Mexico. Your Honor, that is true for some drugs. However, Mr. Villegas is on a constant rotation of different antipsychotics. You told us there's no proof of what it costs. Your Honor, that is true. However, these medications are difficult to afford. Right now he is relying on Medi-Cal to provide him his medications. He cannot afford them even on his salary in the United States, let alone what he would be making in Mexico. Confinement to a mental institution in Mexico is a basic term of imprisonment from which there is no appeal. Although Respondent has argued in his brief that this is not necessarily specific intent on the part of the Mexican government, however, when you take a deliberate action and you have a foreseeable consequence, that can be interpreted under some Third Circuit law that we've submitted in our brief as specific intent. We would argue in this case the deliberate action by the Mexican authorities in confining individuals to mental institutions can indeed constitute that specific intent, and they know the foreseeable consequence will be that these institutions are in very poor repair. We submitted ample testimony in the record regarding the state of the institution, including testimony by psychologists who had been there, 2020 documentaries, internationally recognized organizations going in there and reviewing their conditions and determining that they are inhumane and would indeed be a reality of Petitioner's life were he returned to Mexico. The second point that we would like to address today is whether or not we can review whether or not this is a particularly serious crime. Matter of Frantesco indicates four different criteria that immigration courts must use in determining whether a Petitioner has been convicted of a particularly serious crime, and we can review as a matter of law if the immigration judges have not followed these criteria and instead done a summary kind of a judgment as opposed to a review on a case-by-case basis. The most important criteria in this instance is whether or not Petitioner would be a danger to the community. In this case, the fact that he was off his medication when the crime was committed, the fact that on the very day of the crime he did indeed go to county and request help, saying that he was not well and that he needed to be taken care of and was turned away, indicates that as long as he is able to stay on his meds as provided by Medi-Cal and by the care here, he will not continue to ever be a danger to the community. That incredible extenuating circumstance should have been taken into account by the immigration judge. However, the immigration judge did not go through the analysis of the Frantesco factors and instead made a very summary two-sentence evaluation as to whether or not Petitioner had been convicted of a particularly serious crime. Returning also once again to the analysis of the torture, we also have to look to the fact that we can create a social group for individuals with mental disorders. This is a specific quality of the person which an individual cannot change. The fact that he does have bipolar disorder will mark him in the eyes of the Mexican government. The fact that he will only be able to take with him about two to three months' worth of medication means that after a few months in Mexico, he will indeed start to display the symptoms of his disorder. As his behavior pattern has shown in the past, this renders him essentially incapacitated. Without the ability to continue with his medical regimen, he will have to eventually come in contact with authorities. Upon that, the evidence has shown in the record that he will most likely, more likely than not, be placed into a mental institution and combined in these inhumane conditions. This has been borne out through the fact that other individuals in his similar situation have had this happen to them. Were he a member of a more elite class able to afford private medication, this would not be an issue. However, the fact that he does not make enough money to afford his medications even here in California and that he has to rely on Medi-Cal, additionally, were he to return to Mexico, he would not be able to afford his medications as well. And once again, to briefly sum up, we have the two factors that we are examining today. First, whether or not he would be subjected to torture. We would like to distinguish this case from a matter of JE in that we are not discussing a situation where individuals are confined to prisons, rather a situation where an individual without committing any act against the state will be going to authorities seeking help for a condition that he cannot afford to care for by himself and as a result of that be placed into inhumane conditions. Secondly, we have to look at whether or not this is a particularly serious crime. The immigration judge did indeed commit a grave error in not considering the matter of Francesco factors, which allows us to review this as a matter of law and remand it down to the immigration judge, suggesting that he must look at all of the factors, most specifically in this case, that Petitioner will not be a danger to the community as a result of the fact that his condition can be controlled by medication and has been controlled by medication for the past several years. Thank you, Ms. Johnson. Thank you. Mr. O'Connor. May it please the Court. I am Blair O'Connor on behalf of the Attorney General. Your Honor, the only issue that is properly before this Court concerns Petitioner's eligibility for the referral of removal under the Convention Against Torture. In order to establish eligibility for such relief, the Petitioner must establish a clear probability that he would suffer acts specifically intended to inflict severe physical pain or suffering. Because the evidence of record in this case fails to compel the conclusion that Petitioner would be subjected to torture in Mexico, or even assuming that he would be, that the Mexican government is acting with the requisite specific intent in failing to maintain substandard conditions in its mental institutions, the denial of Petitioner's application for referral removal should be upheld, and this petition for review should be dismissed in part and denied in part. Now, initially, the government asserts, continues to assert its argument in its opening brief that the Court lacks jurisdiction to review the immigration judge's denial of withholding a removal, because that was based on a discretionary determination that Petitioner's aggravated felony robbery conviction, although it contained a sentence of less than five years, was nonetheless a particularly serious crime that barred him from eligibility for withholding of removal. Based on this Court's precedent decisions in Matsuk v. INS, Singh v. Ashcroft, Unakowala v. Gonzalez, and most recently in Morales v. Gonzalez, all of these cases affirm the principle that when an immigration judge makes a discretionary determination that an aggravated felony carrying a sentence of less than five years is nonetheless a particularly serious crime, that that is a discretionary determination that is barred from review under 8 U.S.C. 1252a2b. Therefore, the Court does lack jurisdiction over that determination, and the only thing it may consider is the Petitioner's application for deferral of removal under the Convention Against Torture. Now, with respect to the deferral of removal claim, again, as I stated, in order to be eligible for such relief, he must establish that the actors, the tormentors, specifically intended to inflict severe physical pain and suffering. Now, the immigration judge noted that his deferral of removal claim was conditioned on several precedent conditions in order to even get there. First, that he would not be able to afford the medication that he needed in Mexico. Second, that he would, in fact, be placed in a government-run mental institution in Mexico. And third, that once placed in there, he would be in there indefinitely. The immigration judge found that there were several what-ifs that he simply failed to make out the claim of eligibility. But even assuming that all those three things were to happen, the immigration judge also found that there is insufficient evidence in this case to satisfy the specific intent requirement under the regulation, 8 CFR 1208.18, I believe it's A5. Basically, the immigration judge noted the documentary evidence which Petitioner submitted, and in that evidence it indicated, and these were people, the very organizations that Petitioner relied upon, specifically the Mental Disability Research, Disability Rights International Group, found that significant progress had been made by the Mexican government in several of its mental institutions. The director of mental health had stated that the total number of long-term patients in the government-run mental institutions would be reduced by one-third within that year, and that the goal under a new mental disability law enacted by the Mexican government in 1994 was to completely eliminate all those, it was to get all those patients out of the mental institutions and into community-based type programs, where they would not obviously be subjected to the conditions that were in the mental institutions themselves. Also, the director of mental health for Mexico gave complete access to tours of the mental institutions by the various groups, like the mental, by the MDRI, Amnesty International, et cetera. When 2020 came down to do its news report on that, they had unfettered access to the mental institutions. In fact, the Mexican government encouraged them to come back after several months so they could see the progress they were making to improve the conditions in those institutions. He reported that recently 1.2 million had been allocated by the government to improve the conditions in those mental institutions, and the Ministry of Health sought the input from MDRI and like organizations to give them advice on what they could do to improve those conditions. Therefore, under the compelling evidence standard, this record simply fails to even get close to the fact of showing that requisite intent that the Mexican government was deliberately creating and maintaining these substandard conditions with the purpose of inflicting severe physical, mental pain or suffering on the patients in those institutions. Basically, Petitioner's cat claims is indistinguishable from any other mental patient in Mexico that would need to be placed into one of these institutions. And that makes this case very similar to the board's precedent decision in matter of JE. There, a Haitian criminal was making the allegation that because he would be detained in Haiti upon return and the conditions in Haitian prisons were deplorable, that therefore he would be tortured. And the board found that simply making that general claim, you don't distinguish yourself from any other Haitian criminal who would be returned to Haiti. That was insufficient to make out a claim for deferral removal under the cat. Now, there's been two cases. Why would he have to distinguish himself? Suppose they torture all of them. Again, the board found that there was no specific intent by the Haitian government in maintaining those conditions. That's different than saying he didn't show that his case is any different from anybody else's. Yes. The reason I make that point, Your Honor, is because there's been two circuit decisions, a third circuit decision in Levera and an 11th circuit decision in Pierre, and those also involved Haitian criminal aliens. But the reasons that both the third and 11th circuit found in those cases to be unique is that there was something specific about those individuals. Both of those were HIV positive. In Levera, it was an amputee. And they showed that, look, this is a life-threatening condition. I will not be able to get the medicine that I need if I'm sent back to the Haitian prisons. Therefore, those courts found that they were different from your just run-of-the-mill criminal alien. And that was unique evidence that the agency failed to consider. And the reason my point is, is that we don't have any unique type evidence in this case that this immigration judge failed to consider. I mean, Petitioner's claim is no different than any other individual from Mexico that may have a mental disability and might require placement into one of its state-run institutions. So barring any questions from the Court, again, I would simply state that the Court lacks jurisdiction, again, to review the immigration judge's denial of withholding a removal. And although we do concede that under the precedent decisions of Lima-Scavalli and Morales, although we disagree with those, we do acknowledge that the Court has jurisdiction over the deferral removal claim. But the evidence in this case fails to compel the conclusion that this Petitioner has established his eligibility for such relief. Therefore, we do ask that the petition for review be dismissed in part and denied in part. Thank you, Mr. O'Connor. Ms. Johnson, you have a couple of minutes left if you need them or want them. Thank you, Your Honors, very briefly. Government counsel spoke a great deal about goals and progress that is being made. However, we must look to current conditions as opposed to intended conditions when we evaluate a person's claim for relief under the Convention Against Torture. Second, when we look to the specific intent argument, keep in mind the point that I made initially, which is that a deliberate action with perceivable consequences can indeed constitute specific intent. As long as the Mexican government deliberately acts to confine individuals to mental institutions, the perceivable consequences, they will be confined to these conditions. That can indeed constitute the specific intent. Secondly, to further distinguish Petitioner from the Haitian prisoner's case, once again, let's keep in mind that he is a member of a social group of individuals who have bipolar disorder. He is not a part of the general population who may or may not commit a crime and therefore be confined to a prison. There is a special characteristic which he cannot change about himself, the characteristic of his mental illnesses. For these reasons and the reasons listed in our brief, we urge the Court to grant this petition. Thank you, Your Honors. Roberts. Mr. O'Connor, thank you as well. The case is submitted.
judges: Hall, Nelson, Silverman